313 P.2d 459

**Walter ANDERSON, Plaintiff and Respondent,**

v.

**Arthur HARDMAN, d/b/a Hardman Auto Sales, Defendant and Appellant,**

**Nathan Child and Barrus Motor Company, Defendants.**

No. 8580.

Supreme Court of Utah.

June 28, 1957.

Hanson & Baldwin, R. M. Berry, Salt Lake City, for appellant.

Rawlings, Wallace, Roberts & Black, Rich, Elton & Mangum, Salt Lake City, for respondent.

WORTHEN, Justice.

This appeal is taken by the defendant Hardman from a judgment rendered against him and defendant Child in favor of plaintiff in the amount of $5,632. On

December 20, 1954, defendant Child was driving a pickup truck east on Highway 40, about 8 or 10 miles west of Salt Lake City when his truck veered suddenly to the north side of the highway where it collided with a car driven by George Williams in which plaintiff was riding. Plaintiff sought to recover damages against Child, Hardman and Barrus Motor Company. Defendant Hardman was named defendant upon the theory that Child was his servant or agent, and Barrus Motor Company upon the theory that the steering apparatus of the vehicle were in a defective condition, which condition was known, or should have been known, by Barrus Motor Company. The jury returned a verdict in favor of plaintiff and against defendants Child and Hardman.

The basic question on appeal is whether or not under the facts the conceded negligence of defendant Child can be imputed to the defendant Hardman under one of the following theories, to-wit:

(a) Child was the employee of Hardman.

(b) Child was Hardman's agent.

(c) Child and Hardman were engaged in a joint enterprise.

There is no substantial conflict in the evidence; and the facts concerning the relation between Hardman and Child are uncontroverted. The question is what conclusion of law must be drawn from the evidence.

Hardman was a used car dealer with his place of business at Sunset, Utah. Child approached Hardman relative to the purchase of a pickup truck. Hardman told Child that he would keep looking and try and find a suitable truck. A short time before December 20, 1954, Hardman informed Child that there was a pickup truck available at Barrus Motor Company in Tooele, Utah, that might be suitable. Arrangements accordingly were made for Hardman and Child to go to Tooele and see the truck.

On the morning of December 20, 1954, Hardman and Child left for Tooele in Hardman's wrecker truck with Hardman driving. They looked at the pickup truck, test drove it and discovered several minor flaws which were corrected by Barrus Motor Company. Child advised Hardman that he wanted the truck, and the terms of $650 and Child's old truck were agreed upon. Barrus Motor asked $600 of Hardman for the pickup. Hardman indicated to Child that unless Child wanted to buy the vehicle from him for $650 and Child's old truck, Hardman would not purchase it from Barrus Motor Company, as he had no market for it and didn't want to pay the property taxes which would become due January 1, 1955.

Hardman and Child agreed upon the following terms. Child would pay Hardman $500 cash and turn over his old truck immediately upon their return to Sunset and

would pay the balance of $150 in about 90 days. When Child expressed his wish to buy the pickup, Hardman gave Barrus Motor Company his check for $600 and received from Barrus Motor Company a bill of sale and certificate of title to the pickup and a receipt for the $600 paid.

These documents were retained by Hardman and the two prepared to leave for Sunset. Hardman put his dealer's license plates on the pickup and suggested that Child drive the pickup and he would drive the wrecker and tow a jeep back to Sunset. Hardman also stated that it would be advisable for them to pass each other occasionally so they would know that everything was all right.

Hardman and Child then left Tooele with Hardman driving the wrecker and towing the jeep, followed by Child driving the pickup. At Mills Junction, some distance north of Tooele, Hardman stopped his vehicle to check the towing cables, and Child stopped behind him. After leaving Mills Junction, and before the accident, each passed the other once, and when Child was making the second pass the accident occurred. No compensation was paid Child by Hardman, nor does it appear that either Child or Hardman purchased any gas or service of any kind for the pickup.

Upon these facts the court submitted the case to the jury and instructed it that it could not find against defendant Hardman, unless in addition to finding the negligence of Child, it also found that Child was the agent or employee of Hardman.

With the jury's finding that Child was the agent of Hardman there can be no argument. The jury's determination that Hardman was at the time of the accident the owner of the pickup finds ample support in the evidence.

It cannot be denied that the primary purpose behind the trip to Tooele was securing a truck satisfactory to Child. True, Hardman was interested, as is every car dealer, in helping a customer and at the same time affording a profit for himself. The record is without dispute that Hardman wasn't interested in buying the truck for himself. When he had located what appeared to be a pickup truck which would interest Child, Hardman told Child that he thought he had located a pickup in Tooele, Utah, which might suit him. Accordingly Child and Hardman went to Tooele in order that Child might see the vehicle and if satisfactory arrange for its purchase. Child took no money with him although it appears that he had $500 in cash at home. Both knew that it was a truck for Child that was to be looked at. Hardman wasn't interested in the pickup for any purpose except to arrange for its purchase, with the agreement on Child's part that he would take it and would pay in the manner indicated. The record is clear that Hardman wouldn't have purchased without the definite assurance that, upon their return to

Sunset, Child would pay the $500 cash—turn over his old truck and agree to pay the other $150 within 90 days.

The driving of the Hardman pickup to Sunset was necessary to have arrangements completed in order that the title to the pickup could pass to Child. Child was willing to drive the vehicle back to Sunset in furtherance of his desire to buy it.

We think the verdict and judgment are fully supported by the evidence.

Nor do we find any prejudicial error in any instruction given by the court or in the refusal to give any requested instruction.

Affirmed. Costs to respondent.

McDONOUGH, C. J., and CROCKETT and WADE, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent, respectfully suggesting that the facts recited in the main opinion, rather than establishing Child as agent for Hardman, establish the reverse. Everything points to Hardman's efforts *in behalf of* Child. The main opinion points to Hardman as having said "he would keep looking and try and find a suitable truck" *for* Child. Later he found a truck which Child *agreed to buy*. The "primary purpose behind the trip to Tooele," says the main opinion, "was securing a truck *satisfactory to Child*" and "Hardman wasn't interested in buying the truck for himself." It continues that the trip was arranged "in order that Child might see the vehicle and if satisfactory *arrange for its purchase*," and that "both knew that it was a *truck for Child*." It appears that Child did nothing for Hardman, unless it is suggested that driving the truck may have been for Hardman, which suggestion can be met by the more reasonable conclusion that Child, being the purchaser of the truck, was driving it for himself, after going to Tooele for the "primary purpose," says the majority opinion, of getting a truck *for Child*, not Hardman.

I believe this case to be the ordinary vendor-vendee situation. If we attach to such a situation a relationship of joint agency, absurd results easily could be effected and the channels of trade would become rivers of danger. Under the decision here, it would seem that no car dealer safely could permit a prospective buyer to take a car out for testing or other purposes, and the merchant would have difficulty in escaping liability for the tortious acts or omissions of his customers, whether occurring on the premises or on a "trip" to the place of business for the purpose of making purchases,—which result would fly in the teeth of the universally accepted rule to the contrary.[1]

1. 31 A.L.R.2d 1445.

Since it seems to me that the only agency that may have arisen here was that of a merchant for his customer, the judgment against the latter was proper, but as to the former, it was improper.

